■ MARIA MORALES, as Administratrix of the Estate of DOM-INGO MORALES, Deceased, et al., Respondents, v CITY OF NEW YORK, Appellant, and KEVIN DURKIN, Respondent.—Judgment, Supreme Court, Bronx County (Aldo Nastasi, J.), entered August 15, 1984, in this action for wrongful death and conscious pain and suffering which, upon a jury verdict, awarded the total sum of $424,818.98 to plaintiff Morales (the total sum includes $50,000 for conscious pain and suffering and also takes into consideration a 25% reduction for plaintiff's decedent's contributory negligence) and the total sum of $12,262 to plaintiff Martinez (the total sum includes no award for conscious pain and suffering and takes into consideration a 90% reduction for plaintiff's decedent's contributory negligence), modified to reverse as to plaintiff Morales, on the law and the facts, and a new trial ordered on the issue of damages only unless plaintiff Morales, within 20 days after service upon her attorney of a copy of the order herein, with notice of entry, serves and files in the office of the clerk of the trial court a written stipulation consenting to the reduction of the judgment in her favor to the total sum of $249,818.98, in which event the judgment, as so reduced, is affirmed, all without costs or disbursements.

In plaintiff Morales' wrongful death action the jury specifically found "pecuniary damages" of $500,000 which it made subject to a 25% reduction for decedent's contributory negligence. We find this award excessive and reduce it, taking into consideration the contributory negligence reduction, to $200,-000. We find no merit to the other points raised by defendant-appellant.

Plaintiff Morales and her decedent were married at 18 in Puerto Rico in 1972 after finishing high school. They have two minor children. They came to New York in 1978 and the husband was killed in February 1979 in the incident giving rise to this action. The testimony regarding damages, provided solely by the surviving spouse, covers but 18 of the 1,248 pages of trial transcript. The evidence of decedent's employment and earnings is meager. He was a mechanic and truck driver for a sugar cane corporation in Puerto Rico; we are not told what he earned. In New York, he quit his first job working for a company making lighting fixtures because the paint aggravated his asthma. His second job was for a jewelry-making company. He was laid off. At the time of his death, he was collecting unemployment insurance and, according to his wife, making about $100 a week fixing cars for people in the neighborhood.

The dissent holds that the jury could forecast a dramatic increase in decedent's earnings had he lived. It bases this on the wife's testimony that her husband had "discussed with her his plans to attend an automobile mechanics school and his hopes of opening his own repair shop." Such a forecast would be pure speculation, if not belied by decedent's work record and his never having earned more than $6,000 in any year since his marriage. The jury award of $500,000 pecuniary damages invested for as little as 5¼% bank interest would produce an annual return of $26,250. The difference between such an income and that portion of his earnings which the decedent could be expected to use for the benefit of his wife and children (see, EPTL 5-4.3) cannot be supported, as the dissent seemingly does, by such factors as loss of care, love, and guidance, even though these factors are proper elements to be considered (see, Richardson v Lutheran Hosp., 70 AD2d 933). Were it otherwise, a jury's determination would be unlimited. Concur—Murphy, P. J., Kupferman, Ross and Lynch, JJ.

Carro, J., dissents in part in a memorandum as follows: By ruling to reverse this judgment unless plaintiff Morales stipulates to a reduction in the net wrongful death award of from $424,818.98 to $200,000, the majority has improperly substituted its judgment for that of the jury and has, in effect, determined that the violent and untimely death of this 25-year-old devoted father and husband and sole family wage-earner has very minimal economic consequences to his survivors. Any reduction in the award is simply uncalled for and compels me to part company with my colleagues and dissent.

Only a brief recital of the facts surrounding this tragic event need be given, since the only issue dividing this court is that of damages. On February 21, 1979, Police Officer Kevin Durkin was at Mr. G's Bar in The Bronx drinking beer and playing pool. He was off duty that day and carrying his off-duty revolver. He consumed about 10 to 12 seven-ounce glasses of beer. Decedent Manuel Martinez struck up a conversation with Durkin which soon became unpleasant. Martinez accused Durkin of being prejudiced against Puerto Ricans and threatened to get "his boys" and take care of Durkin. Martinez also made threats against Durkin's family, claiming he knew where to find them. At one point he even stated that he was a member of the FALN terrorist organization.

At some point during the exchange, Domingo Morales entered the bar. Martinez told Durkin that Morales was his bodyguard. Morales put his hands in his coat and did not

speak except to reply "no comprendo" when Durkin tried to speak to him. Martinez persisted in his threats and demanded that Durkin leave with him or he would send his boys after Durkin's wife and child. Eventually, Durkin opened fire on the two men, killing them. Other officers present in the bar disarmed Durkin as he was attempting to reload his gun. Durkin shouted, "I'm on the job" and then dashed across the street to the 46th Precinct to contact his wife.

We are all in agreement that the jury's verdict finding that Durkin was negligent and that his negligence was committed within the scope of his employment should be affirmed. We also do not disturb the jury's conclusion that decedent Morales was 25% contributorily liable. Our point of departure lies in our differing view of the jury's assessment of the damages resulting from Morales' death, which were established as $65,000 for conscious pain and suffering, $1,425.30 for funeral expenses (neither of these items have been contested) and $500,000 as the wrongful death damages for Morales' surviving wife and children. After the 25% reduction, the total net award amounts to $424,818.98.

The City of New York argues, and my colleagues agree, that the $500,000 awarded as wrongful death damages is excessive. I respectfully feel that the majority has given short shrift to the established rule that great caution and restraint must be exercised when a court is asked to review a jury's assessment of damages. That determination should not be disturbed unless it is so excessive or inadequate as actually to shock the conscience of the court. *(Juiditta v Bethlehem Steel Corp.,* 75 AD2d 126, 138; *Petosa v City of New York,* 63 AD2d 1016, 1016-1017.)* The court is not to substitute its judgment for that of the jury. In a wrongful death action the jury is entitled to consider as part of the pecuniary damages the loss of care, love and guidance a parent provides for his or her children, the chores and duties performed by the parent, the loss to the surviving spouse of services, society and companionship, as well as the loss of future earnings. *(De Long v County of Erie,* 89 AD2d 376, 386, *affd* 60 NY2d 296; *Juiditta v Bethlehem Steel Corp., supra,* p 139; *Richardson v Lutheran Hosp.,* 70 AD2d 933; *Spadaccini v Dolan,* 63 AD2d 110, 124.) This jury was properly instructed as to these elements and quite obviously gave them the fullest consideration.

In the most recent of the above cases, *De Long v County of Erie (supra),* a wrongful death award of $600,000 was upheld for the death of a 28-year-old mother of three children, 8, 6 and 1 years of age, even though she was not employed outside

the home. There was much testimony there concerning the multitude of duties the mother performed in the home and her admirable attributes as a mother. *(Id.,* p 386.) The court saw nothing excessive or shocking about awarding $600,000 for the loss of services of this mother who was not earning any income.

Yet, this court would reduce the instant award on the ground that this decedent had a low earning capacity. Subtracting the $50,000 for the conscious pain and suffering (after the 25% reduction), to which no one objected as being excessive, my colleagues are of the opinion that $150,000 is a reasonable award that adequately compensates the surviving spouse and children for the loss of decedent's future earnings, the loss of his parental nurturing and love and the spouse's loss of consortium. It is this figure which I find to be shocking to the conscience and an insult to this family.

Morales and his wife were each 25 years of age at the time of the shooting. They had known each other since childhood when they entered the first grade together in their native Puerto Rico. They were married at age 18. Two sons were born of this marriage, one six years old at his father's death and the other three years old. Mrs. Morales testified that the decedent was a loving and caring husband who helped her clean the house, performed the food shopping, loved to cook, took the oldest child to school, shared playing with the children and always supported his family economically.

Morales had a life expectancy of 43 years and a work life expectancy of 36 years. While living in Puerto Rico he had been employed as a truck driver and mechanic. Only one year before the shooting he and his family moved to New York City where Morales secured a job at a manufacturing concern, earning $116 per week. Because the paint fumes there aggravated an asthmatic condition, he left that job and obtained employment at a jewelry business at about the same salary. That job ended and for two months prior to his death, Morales collected unemployment benefits which he supplemented with income from his side work as an automobile mechanic, at which he earned approximately $100 per week. Morales' wife testified that he had discussed with her his plans to attend an automobile mechanics school for additional training and his hopes of opening his own repair shop. The jury was more than entitled to assume that with additional time in this country and a greater facility with the English language, Morales could very well have dramatically increased his earnings with his automobile mechanic's skills.

The picture that emerges is of a young man, a dedicated father and husband, who, after only living in this country one year, had not yet reached his income earning potential, but was, nevertheless, skilled, had aspirations, and was making a concerted effort to support his family single handedly. An award of $500,000 which encompasses the lost future earnings of this 25-year-old father of two, the loss of the love, care and guidance he would have provided to his sons and the loss of consortium to his childhood friend and wife is not shockingly excessive. Rather, it represents an objective appraisal of the pecuniary loss this family will suffer from Domingo Morales' untimely death.